IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GREGORY COOK,<br><br>Defendant. | CR. NO. 19-00170 JAO<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)** |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release)**

Defendant Gregory Cook ("Defendant"), initially acting pro se, filed a

Motion for Modification of Sentence and Compassionat (sic) Release ("Motion"),

seeking compassionate release pursuant to 18 U.S.C. § 3582.  ECF No. 99; ECF

No. 109-1.  The Court decides the Motion without a hearing pursuant to Local

Rule 7.1(c).  For the following reasons, the Motion is DENIED WITHOUT

PREJUDICE.

**I.      BACKGROUND**

A.      Procedural History

On December 5, 2019, the Grand Jury indicted Defendant on four counts:

Possession of Heroin with Intent to Distribute, a violation of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(C), two counts of Possession of Five Grams or More of

Methamphetamine with Intent to Distribute, both violations of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(B), and Possession of a Firearm in Furtherance of a Drug

Trafficking Crime, a violation of 18 U.S.C. § 924(c)(1)(A).  ECF No. 1.  The

Indictment also included a Notice of Prior Conviction under 18 U.S.C. § 924(c).

*Id*.  Defendant was detained pending trial.  ECF Nos. 10, 33.

On March 4, 2021, the Grand Jury returned a Superseding Indictment, which

included a new count of Felon in Possession of a Firearm, a violation of 18 U.S.C.

§ 922(g)(1).  ECF No. 58.  On May 28, 2021, Defendant entered a guilty plea to

one count of Possession of Methamphetamine with Intent to Distribute, and the

Felon in Possession of a Firearm count, pursuant to a Federal Rule of Criminal

Procedure ("FRCP") 11(c)(1)(C) plea agreement ("Plea Agreement").  ECF No.

80.  The Plea Agreement required the parties to recommend a ten-year term of

incarceration at sentencing.  *Id*. ¶ 4.  On September 28, 2021 — less than six

months ago — the Court imposed a ten-year concurrent sentence as to both counts

consistent with the terms of the Plea Agreement, and granted the Government's

motion to dismiss the remaining charges.  ECF No. 96.

On November 3, 2021, Warden Estela Derr, who is the warden of the

Federal Detention Center Honolulu ("FDC"), where Defendant was housed at the

time, denied Defendant's request for a reduction in sentence.  ECF No. 99-1; ECF

No. 109-3.  Defendant based his request on his need to care for his wife and his

medical condition; only the latter was addressed in the denial, however.  *See* ECF

No. 99-1; ECF No. 109-3.

On November 17, 2021, while still detained at the FDC, Defendant pro se

filed the Motion and also requested appointment of counsel.  ECF No. 99 at 7; ECF

No. 109-1 at 8.  That request was granted and the Court appointed Gary Singh,

who previously represented Defendant.  ECF Nos. 103, 104.  The Court directed

Mr. Singh to file either a supplement to the Motion, or a statement indicating that

he opted not to supplement the Motion no later than January 6, 2022.  ECF No.

106.  Mr. Singh filed neither.

The Government filed an opposition on January 19, 2022, ECF No. 107, and

Defendant did not file a reply.

B. Defendant's Background

1. Defendant's Detention

While in pretrial detention on this matter, Defendant committed three

infractions, primarily related to his treatment of FDC staff.  *See* ECF No. 107-2 at

1.

Defendant is currently incarcerated at Victorville Medium II Federal

Correctional Institution ("FCI") and is expected to be released on June 1, 2028.

*See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc (follow "Find By

Name" tab; then search for "Gregory K. Cook") (last visited Feb. 3, 2022).

       2.      Defendant's Current Medical Condition

Defendant, who is 65 years old, suffers from a panoply of medical

conditions ███████████████████████████████████████████

████████████████████████████████████████████████████

███████.  ECF No. 99 at 5; ECF No. 109-1 at 6.  Defendant received doses of

the Moderna vaccine on August 25 and September 29, 2021.  ECF No. 107-1.

       3.      Defendant's Wife's Medical Condition And Living Situation

In his letter to the Court at sentencing, Defendant extensively detailed his

wife's medical history, explaining that, in August 2018, she suffered a stroke at

home, and was transported from Hawaiʻi Island to ʻOahu for emergency medical

treatment.  *See* ECF No. 92-1 at 2.  The Presentence Report also explained

Defendant's wife's medical condition at the time of sentencing.  *See* ECF No. 91

("PSR") ¶ 78.  In support of the Motion, Defendant supplied a letter from his adult

daughter, ECF No. 99-2; ECF No. 109-4, a 2018 medical record for his wife, and

an email from his wife, in which she reports that she is "totally disabled."[1]  *See* ECF No. 99-5.

The 2018 record is a discharge record ████████████████████████ ██████████.  Nothing in it reflects the prognosis for recovery.  *See* ECF No. 99-5.

The letter from Defendant's daughter explains that, upon Defendant's wife's release from the hospital following her stroke, Defendant assisted her with, among other things, her medications, transportation, and personal hygiene.  *See* ECF No. 99-2; ECF No. 109-4.  The letter also indicates that Defendant's and his wife's two adult sons abuse controlled substances, and that one of them currently lives with Defendant's wife.  According to the letter, that son and his girlfriend have physically abused her, threatened her, withheld food and water from her, and stolen money from her.  Despite efforts by Defendant's wife and his two adult daughters to involve the police, neither state nor local agencies have assisted.[2]  Defendant's daughter who wrote the letter does not live in Hawaiʻi and cannot relocate to Hawaiʻi Island.  Neither Defendant nor his wife have any other relatives in Hawaiʻi who can assist.

---

[1]  Included with his wife's medical records are several documents from 2021, but none of those documents offer any substantive information regarding her condition.  *See* ECF No. 99-5.

[2]  The letter indicates that one reason the police may not have taken action is that when they reported to the home in response to calls, Defendant's wife was too afraid to describe what her son was doing to her.

The email from Defendant's wife, although not addressing her medical condition, does suggest that Defendant's characterization of her mental functioning as described in the PSR was a bit exaggerated.  His wife appears to be more capable than ███████████████████████ what Defendant had reported, *see* PSR ¶ 78, as she can put together a coherent email expressing her feelings, pointing out how long it has been since she and Defendant spoke, and attaching forms that were requested.  *See* ECF No. 99-5.

      4.     Defendant's History

At the time of the offense in this case, Defendant was on state supervision for 2016 drug convictions ██████████████████████████████; as a condition of supervision, Defendant was ordered to not own, use, or possess any firearms or ammunition.  *See* ECF No. 107 at 18; PSR ℙ 60; https://www.courts. state.hi.us/legal_references/records/jims_system_availability (choose "Click Here to Enter eCourt* Kokua," then choose "Accept," then choose "Case Search," then search for "Case ID 3PC161000302") (last visited Feb. 3, 2022).  ████████

██████████████████████████████████████████████

████████████████████████████ PSR ℙ 60.  Defendant's conduct in the instant case, which he committed in 2019, involved over 23 grams of methamphetamine, ████████████████ and a loaded 9mm handgun and ammunition.  PSR ¶ 20; ECF No. 80 ¶ 8.

6

In addition to the above, Defendant has an extensive criminal record that includes firearms convictions and a prior federal robbery conviction that included the use of a firearm in the course of that offense.

     5.     Conditions at Victorville Medium II FCI

As of this writing, Victorville Medium II FCI has suffered one death of an inmate or staff member during the two-year course of the pandemic.  *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (click on "Full breakdown and additional details") (last visited Feb. 3, 2022).  Currently, it has a population of 1,247 inmates, with 106 inmates who are COVID-19 positive.  *See id.*; Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/vvm (last visited Feb. 3, 2022).

## II.    DISCUSSION

### A.    The First Step Act

Title 18, United States Code, Section 3582(c)(1)(A), allows courts to grant compassionate release motions brought either by the Director of the Bureau of Prisons or an incarcerated defendant so long as certain requirements are met:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that

> does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (2018).  United States Sentencing Guidelines Manual ("USSG") section 1B1.13 ("the Guideline") addresses Section 3582 motions, but the Sentencing Commission has not updated the Guideline since the passage of the First Step Act.[3]  In *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021), the Ninth Circuit held that the Guideline "is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(C)(1)(A) motions filed by a defendant." (brackets in original).  In such cases, the Guideline "may inform a district court's discretion . . . but [it is] not binding." *Id*. (citation omitted).

In any event, the Court considers the Guideline because Defendant relies on it in the Motion.  *See* ECF No. 99 at 5; ECF No. 109-1 at 6.  The Guideline outlines four categories of extraordinary and compelling reasons in the application

---

[3]  The Commission's failure to amend the Guideline is likely due to its lack of sufficient members for a quorum.  *See* U.S. Sentencing Commission, "Organization," https://www.ussc.gov/about/who-we-are/organization (last visited Feb. 3, 2022) ("The affirmative vote of at least four members of the Commission is required to promulgate amendments to the sentencing guidelines.") (listing only 1 voting commissioner, whose term expired on October 31, 2021).

notes:  the defendant's medical condition; the defendant's age (at least 65 years old), but only if his health is deteriorating due to aging and he has served at least 10 years or 75 percent of his sentence (whichever is less); family circumstances; and "other reasons."  USSG § 1B1.13 cmt. n.1.

Defendant bears the burden of establishing the extraordinary and compelling circumstances that would justify compassionate release.  *See Aruda*, 993 F.3d at 801 ("[D]istrict courts are empowered to consider *any* extraordinary and compelling reason for release *that a defendant may raise*." (internal quotation marks, alteration, and citation omitted) (second emphasis added)); *Andrews v. King*, 398 F3d 1113, 1124 n.2 (9th Cir. 2005) (Fernandez, J., concurring in part) (noting that "in the sentencing context, the burden of proving facts that would warrant a reduced sentence rests on the defendant" (citations omitted)); *see also United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)).

B.      Whether Extraordinary And Compelling Reasons Exist Here[4]

The question before the Court is not the same question addressed at

---

[4]  The Court finds — and it is undisputed — that Defendant has met the administrative requirements for filing the Motion.

sentencing.  The Court is not asked to determine whether the sentence previously imposed was "sufficient, but not greater than necessary" to comply with the factors outlined in 18 U.S.C. § 3553(a)(2), but rather, to determine whether "extraordinary and compelling reasons warrant . . . a reduction." 18 U.S.C. § 3582(c)(1).  If the answer to that question is yes, then the Court is required to evaluate the Section 3553(a) factors to decide whether to reduce the incarceration term.  *See* 18 U.S.C. § 3582(c)(1)(A).

> 1.    Extraordinary and Compelling Reasons

In support of the Motion, Defendant relies on two of the factors outlined in Section 1B1.13:  his medical condition and his family circumstances.

> a.    Defendant's Medical Condition

Several of Defendant's medical conditions — ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ — could put him at an increased risk of severe illness from COVID-19.  *See* CDC, *COVID-19:  People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 3, 2022).  However, the medical records he submitted in support of the Motion are dated, and the most recent record suggests that one of his conditions is not severe.

Specifically, the most recent record regarding his ▮▮▮▮▮ condition is from April 16, 2021, which shows that it was undetectable ▮▮▮▮▮▮

10

████████.  *See* ECF No. 99-6 at 22.  The most recent records regarding

Defendant's other relevant medical conditions are from more than two years ago

and, in any event, suggest that, at least at that time, the BOP was aware of and

treating those conditions.  *See* ECF No. 99-6 at 1–3 (████████████████████

████████████████ outlining a list of medications and future tests for

Defendant's various conditions).

     Significantly, Defendant has received two courses of the Moderna vaccine,

the second in late September 2021.  *See* ECF No. 107-1.  Scientific data reveals

that Defendant's risk of death or serious illness significantly decreased once he

was fully vaccinated, *see* CDC, *COVID-19: Interim Public Health*

*Recommendations for Fully Vaccinated People*, https://www.cdc.gov/coronavirus/

2019-ncov/vaccines/stay-up-to-date.html (last visited Feb. 3, 2022).

     District Courts across the Ninth Circuit routinely weigh a defendant's

vaccination against a finding of an extraordinary and compelling reason to grant a

compassionate release motion based on the defendant's medical condition.  *See*,

*e.g.*, *United States v. Peterson*, Case No. 1:17-cr-00232-DCN-1, 2021 WL

2402478, at *3 (D. Idaho June 11, 2021) ("Peterson's vaccination mitigates his risk

of becoming severely ill from COVID-19 to such an extent that the threat of

contracting COVID-19 does not present an extraordinary and compelling reason to

grant compassionate release.") (collecting cases); *United States v. Bisel*, Case No.

10CR5016-H, 2021 WL 3634830, at *4 (S.D. Cal. Aug. 16, 2021); *United States v. Octavio-Gonzalez*, No. 3:16-cr-00270-JO-2, 2021 WL 2104989, at *3 (D. Or. May 25, 2021).

While the Court does not categorically conclude that all defendants who move for compassionate release cannot meet the extraordinary and compelling reasons standard if they are vaccinated, in this case:  (1) nearly all the medical records produced are from two or more years ago; (2) the most recent medical record (from April 2021) showed that Defendant's ▮▮▮▮▮▮ condition was in remission, and addressed none of his other conditions; (3) the BOP's treatment of Defendant's medical conditions appear reasonable, and Defendant has not suggested that the BOP cannot treat his conditions.  Based on these combined facts, Defendant has failed to meet his burden of demonstrating an extraordinary and compelling reason for granting compassionate release.

It is also worth noting that the Court was aware of nearly all of these medical conditions at the time it accepted the FRCP 11(c)(1)(C) Plea Agreement just over four months ago.  *See* PSR ⁋ 82.  Defendant has not shown that any of the then-known conditions worsened, or that any of the new conditions tip the scales in favor of a finding of an extraordinary and compelling circumstance.

b.      Defendant's Family Circumstances

Application Note 1 to Guideline 1B1.13 explains that "family

circumstances" means, among other things, "[t]he incapacitation of the defendant's

spouse or registered partner when the defendant *would be the only available*

*caregiver* for the spouse or registered partner." (emphasis added). District courts

have examined a BOP Program Statement for further guidance. *See, e.g.*, *United*

*States v. Bolden*, CASE NO. CR16-320-RSM, 2020 WL 4286820, at *4 (W.D.

Wash. July 27, 2020) (citing BOP Program Statement § 5050.50, https://www.bop.

gov/policy/progstat/5050_050_EN.pdf) (collecting cases).

That Program Statement requires that the person who needs care must have

either: (1) "[s]uffered a serious injury, or a debilitating physical illness and the

result . . . is that the spouse . . . is completely disabled, meaning that the spouse . . .

cannot carry on any self-care and is totally confined to a bed or chair," or (2)

suffers from "[a] severe cognitive deficit (e.g., Alzheimer's disease or a traumatic

brain injury that has severely affected the spouse's . . . mental capacity or

function), but may not be confined to a bed or chair." https://www.bop.gov/policy/

progstat/5050_050_EN.pdf at 10. The Program Statement further recommends

that an inmate seeking release provide "[v]erifiable medical documentation of the

incapacitation of the spouse." *Id.* Finally, the Program Statement also advises that

"the inmate should demonstrate that the inmate is the only available caregiver for

the spouse . . . meaning there is no other family member or adequate care option

that is able to provide primary care for the spouse." *Id.*

The Court agrees with at least one other district court that the Program

Statement is too narrow in some ways. *See United States v. Sanchez-Coptino*, No.

CR 17-284-TUC-CKJ, 2020 WL 5593757, at *4 (D. Ariz. Sept. 18, 2020).  More

specifically, the Court would not require that a spouse be confined to a bed or a

chair if the spouse's incapacity was due to a physical condition.  However, the

Court is persuaded that it should apply:  (1) the Program Statement's suggestion

that verifiable medical records support the request; and (2) the Program

Statement's definition that "only available caregiver" means that "no other family

member or adequate care option . . . is able to provide primary care."

The Court cannot find that Defendant's wife is incapacitated because it has

virtually no medical records before it that offer insight into her current medical

condition.  *Cf. Bolden*, 2020 WL 4286820, at *4–5 (relying on BOP Program

Statement that spouse's incapacitation must be supported by "verifiable medical

documentation" in denying defendant's request for release to care for child based

on incapacitation of spouse).  Similarly, based on the record before it, the Court

cannot determine that Defendant is the only person who can care for her.  He has

an adult daughter who lives in another state.  Defendant has not offered reasons

why his wife cannot live with her, or in an assisted living facility.  *See Sanchez-*

14

*Coptino*, 2020 WL 5593757, at \*4 ("Sanchez-Coptino has not shown there are no other caregivers available[.]").  The record is bare as to what other efforts have been made to find an alternative living situation.  As such, the Court need not consider the credibility of the allegations about Defendant's sons' treatment of his wife, as disturbing as they may be.

> 2.      Section 3553(a) Factors

Even if the Court were to find that Defendant's family circumstances are extraordinary and compelling reasons to further consider the Motion, it would nonetheless deny the Motion after evaluating the Section 3553(a) factors, which amounts to the same evaluation that it conducted at the time of Defendant's recent sentencing.

Of the Section 3553(a) factors, the one that raised the most concern for the Court at the time of sentencing, as it does now, is Defendant's history and characteristics.  He committed the instant crime at the age of 60, while he was on state supervision for drug convictions ████████████████████████ ████████████████████████████████.  Defendant has a long history of failures not only while under supervision, but also while incarcerated.  And while this might not have been explicitly stated at sentencing, the fact that Defendant is now 65 years old does not give the Court any pause, just as Defendant did not pause his criminal activity as he grew older.

15

Moreover, regarding the nature and circumstances of this offense, while Defendant was likely not more than a street-level drug dealer, he possessed a loaded 9mm firearm and 70 rounds of ammunition while he drove around with his product, revealing an intent to rely on that weapon for protection and a willingness to use it in some fashion. ███████████████████████████████

██████████████████████████

In sum, the Court is not convinced Defendant would no longer pose a danger to the Community if released, and concludes his release would be inconsistent with the Section 3553(a) factors.

## III.  CONCLUSION

For the foregoing reasons, the Court DENIES the Motion WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, February 3, 2022.



Jill A. Otake
United States District Judge

CR NO. 19-00170 JAO; *United States v. Cook*; Order Denying without Prejudice Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release)

16